IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:16-cr-00026 |
| v. | ) | |
| | ) | |
| HERBERT LEE CHILDS | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Herbert Lee Childs' pro se motions for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. Nos. 63, 72).[1] The Federal Public Defender has filed a supplemental memorandum in support of Childs' second motion (Dkt. No. 74), and the United States has filed responses in opposition to both motions (Dkt. Nos. 70, 78), along with a supplemental notice of new authority (Dkt. No. 81). For the reasons stated herein, Childs' first motion for compassionate release based on COVID-19 will be denied; however, Childs' second motion for compassionate release will be granted. The court will reduce Childs' sentence of imprisonment on his distribution conviction to time served, followed by three years' supervised release.

I.  BACKGROUND

In 2012, Childs pled guilty to one count of conspiracy to distribute cocaine in violation of 18 U.S.C. §§ 846 and 841(b)(1). (Case No. 7:11-cr-00085, Dkt. Nos. 45, 46.) He was sentenced to 42 months' imprisonment, followed by three years' supervised release. (Case No. 7:11-cr-00085, Dkt. No. 56.)

In 2016, while on supervised release after serving his full prison term on the conspiracy offense, Childs pled guilty to distribution of cocaine. (Case No. 7:16-cr-00026, Dkt. Nos. 36,

---

[1] Unless specified otherwise hereafter, all docket citations refer to entries in Case No. 7:16-cr-00026.

38.) According to the statement of facts proffered by the government (Dkt. No. 37), police, using a confidential informant, purchased approximately 1.1 grams of a substance containing cocaine from Childs. As part of the plea agreement, Childs stipulated that the career offender section of the Guidelines was applicable to his conduct and affirmed his understanding that "because of [his] prior criminal record [he] may be treated as a 'Career Offender' under Guideline Section 4B1.1" if the court determined he had at least two prior felony convictions for controlled substance offenses and/or crimes of violence. (Dkt. No. 36 at 3.)

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR") (Dkt. No. 66). According to the Sentencing Guidelines and the prevailing law at the time, Childs had an offense level of 29 and criminal history category of VI, which resulted in a Sentencing Guidelines range of 151 to 188 months' imprisonment, followed by three years of supervised release. (Dkt. No. 66 at 18.) Childs originally had an adjusted offense level of 9 and a criminal history score placing him in category V, but he ultimately received a sentencing enhancement due to his designation as a career offender, pursuant to U.S.S.G. § 4B1.1(b). The predicate offenses for Childs' career offender designation included a 2007 conviction for selling cocaine and the 2012 conspiracy conviction for which he was then on supervised release. (Dkt. No. 66 at 5; *see also* U.S.S.G. § 4B1.1(a)(3) ("A defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").) Importantly, at that time, 21 U.S.C. § 846 conspiracy convictions were considered "controlled substance offense[s]" for purposes of the career offender designation. *See, e.g., United States v. Kennedy*, 32 F.3d 876, 888 (4th Cir. 1994).

On January 3, 2017, this court sentenced Childs as a career offender to a term of 151 months' imprisonment for the distribution offense—at the bottom of the enhanced Guideline

2

range—and, in his separate revocation matter, a consecutive term of 24 months' imprisonment for the violation of the terms of his supervised release. (Dkt. No. 45; Case No. 7:11-cr-00085, Dkt. No. 134.) He is now incarcerated at FCI Petersburg Medium; his term of imprisonment on the distribution offenses is expected to conclude on December 26, 2028. (*See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited July 14, 2023).)

In August 2019, just under three years after Childs was sentenced, the United States Court of Appeals for the Fourth Circuit issued its decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), in which the court held that a 21 U.S.C. § 846 conspiracy conviction is not categorically a "controlled substance offense," as required to support a criminal history category enhancement under the Sentencing Guidelines. *Id.* at 239. The Fourth Circuit reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. *Id.* at 236–38. Accordingly, for defendants sentenced after the *Norman* decision, a conspiracy conviction under § 846 (which was one of Childs' predicate offenses) would *not* be considered a "controlled substance offense" and thus could not operate as a predicate offense for a career offender designation.

On January 6, 2021, Childs filed a pro se motion for compassionate release based in large part upon the risks posed to inmates during the COVID-19 pandemic.[2] (Dkt. No. 63.) Pursuant to Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) to represent Childs. (Dkt. No. 64.) The FPD declined to supplement Childs' motion. (Dkt. No. 69.) On July 1, 2021, the government responded in opposition to the motion, arguing that (1) Childs had not

---

[2] Previously, on November 21, 2019, he had also filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Case No. 7:11-cr-00085, Dkt. No. 175), but he later withdrew that motion (Dkt. Nos. 187–88).

3

exhausted administrative remedies as to this motion; (2) the possibility of contracting COVID-19 in prison is not an extraordinary or compelling reason for Child's release given that he did not claim any known COVID-19 risk factors and has been vaccinated; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) do not support Child's release. (Dkt. No. 70.)

On May 2, 2022, Childs filed another pro se motion for compassionate release (Dkt. No. 72) asserting new arguments. In this motion, Childs argued that he would no longer qualify as a career offender if he were sentenced today based on the Fourth Circuit's decision in *Norman*. Thus, he submitted, "[i]f convicted today, under identical circumstances, to the same exact offense – with the same amount of drug weight ascribed to him – his guideline range would be significantly lower than the Federal Sentencing Guideline range" under which he was sentenced in 2017. (*Id.* 2.) On July 30, 2022, the FPD filed a supplement to Child's pro se motion, arguing that the intervening change in the law created a "gross sentencing disparity" that presents "an extraordinary and compelling reason to reduce [Childs'] sentence." (Dkt. No. 74 at 1.) The FPD further argued that a reduction of Childs' sentence conforms with 18 U.S.C. § 3553(a) because, among other reasons, (1) he would have been released but for the career offender enhancements; (2) he cooperated with authorities and embraced responsibility for his actions; (3) he has continued to work on improving himself by completing several behavioral and education courses; and (4) a court has not convicted him of any violent crimes since 2003. (*Id.* 7–9.)

On August 26, 2022, the government responded in opposition to the motion, disputing that such a sentencing disparity based on a change in the law can support a motion for compassionate release and reiterating its earlier arguments as to the § 3553(a) factors. (Dkt. No. 78.) Most recently, on December 14, 2022, the government filed a supplemental notice of new authority regarding the Fourth Circuit's decision in *United States v. Ferguson*, 55 F.4th 262 (4th

4

Cir. 2022), in which the court held that "a compassionate release motion cannot be used to challenge the validity of a defendant's conviction or sentence," *id.* at 272.  (Dkt. No. 80.)

II.  ANALYSIS

**A.  Motions for Compassionate Release**

18 U.S.C. 3582(c)(1)(A)(i), as amended by the First Step Act, provides, in relevant part, that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Childs' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

> **1. Childs has exhausted administrative remedies as to his second motion for compassionate release (Dkt. No. 72), but not his first motion (Dkt. No. 63).**

While the First Step Act modified § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement.  This court has previously found that § 3582's exhaustion requirement is not a jurisdictional bar but, rather, a

claims-processing rule that may be waived. *See United States v. Brown*, Criminal No. 7:19-cr-00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020).

With respect to his *first* motion for compassionate release—based upon the risks posed by COVID-19—Childs has not demonstrated that he exhausted his administrative remedies within the Bureau of Prisons. Rather, he indicated in his motion that he "may require waiver of exhaustion requirements" based on either "the outbreak and the threat it presents" or "case law [ ] that supports reasons to the extraordinary threat of COVID-19 pandemic." (Dkt. No. 63 at 5.) However, when an opposing party properly invokes exhaustion, that requirement is "mandatory." *United States v. Carr*, No. 1:13CR00034-001, 2020 WL 2847633 at *4 (W.D. Va. June 2, 2020); *see also Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) (when "properly invoked," mandatory claim-processing rules "must be enforced"). Because Childs' first motion for compassionate release is devoid of any evidence that he exhausted administrative remedies before filing, that motion will be denied.

However, the government does not contest exhaustion as to the *second* motion for compassionate release—based on alleged sentencing disparities created by the *Norman* decision. (*See* Dkt. No. 78 at 2 ("The government does not dispute that Childs sought compassionate release consideration from the warden of his facility, and that this request was denied.").) Therefore, the exhaustion requirement is satisfied as to the second motion for compassionate release, and the court can proceed to the merits of that motion.

   **2. Childs presents extraordinary and compelling reasons for compassionate release.**

The court must next consider whether Childs has presented any extraordinary and compelling reasons for the court to grant compassionate release and reduce the term of imprisonment.

6

The U.S.S.G. § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). *See* U.S.S.G. § 1B1.13 at cmt. n.1(A)–(D). Although the Fourth Circuit has held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates (as opposed to the BOP), the policy statement remains "helpful guidance even when motions are filed by defendants." *United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020); *see also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (explaining that § 1B1.13 remains useful in framing a court's inquiry as to what constitutes "extraordinary and compelling reasons").

In his second motion for compassionate release, Childs argues that an intervening change in the law regarding the career offender enhancement created a gross disparity between his prison sentence and that of other defendants with his criminal history and offense level, and that this disparity constitutes an "extraordinary and compelling" reason to grant compassionate release.

Under U.S.S.G. § 4B1.1, a defendant is designated a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

7

Childs was originally sentenced on his distribution offense as a career offender, with his earlier § 846 conspiracy conviction operating as one of the predicate "controlled substance offenses." But as noted earlier, in 2019, the Fourth Circuit held in *Norman* that a § 846 conspiracy conviction is not categorically a "controlled substance offense," as required to support a career offender enhancement under the Sentencing Guidelines. 935 F.3d at 239. As such, if Childs were sentenced today, he would not have been designated a career offender.

According to the PSR, Childs' offense level—including a reduction for acceptance of responsibility—was 9. (Dkt. No. 66 at 4.) After accounting for Childs' career offender status and acceptance of responsibility, his offense level was elevated to 29. (*Id.* 5.) The career offender designation also increased his criminal history category from V to VI. (*Id.* 12.) With the career offender enhancement, Childs' Sentencing Guideline range was 151 to 188 months' imprisonment. (*Id.* 18.) But if he was sentenced after *Norman*, and without the career offender enhancement, the Guideline range would have been 18 to 24 months' imprisonment. Thus, the disparity between his original low-end Guideline sentence (151 months) and a low-end sentence under the Guidelines today (18 months) is 133 months, or just over 11 years. Even if Childs received a *high-end* Guideline sentence today (24 months), the disparity from his original low-end Guideline sentence would still be 127 months, or just over 10-and-a-half years. To date, Childs has served about 87 months in prison—*over three-and-a-half times* what the high end of the Guidelines would provide today.

The government does not seem to dispute in its response brief that, if Childs were sentenced after *Norman*, he would not receive a career offender enhancement. The only question is whether the sentencing disparity created by the intervening change in the law ushered in by

8

*Norman* provides an extraordinary and compelling reason for compassionate release. Under the circumstances of this case, the court finds that it does.

First, under prevailing case law in the Fourth Circuit, district courts are empowered to consider sentencing disparities created by intervening changes in the law when evaluating a compassionate release motion pursuant to § 3582. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit considered whether a district court could consider a nonretroactive change to the "stacking" of § 924(c) sentences in the First Step Act when deciding a motion under § 3582. *Id.* at 285. The court held that the district court had discretion to do so. *Id*. In so holding, the Fourth Circuit explained that district courts may "permissibly treat[ ] as 'extraordinary and compelling reasons' for compassionate release" the severity of a defendant's sentence and the extent of the disparity between the defendant's sentence and those provided for under the First Step Act. *Id.* at 286. The *McCoy* court further rejected the government's argument that, in doing so, district courts were impermissibly giving retroactive effect to a statutory provision that Congress had not made retroactive. *Id*. at 287. Indeed, the court expressly held that "[t]he fact that Congress chose not to make [a section] of the First Step Act retroactive does not mean that courts may not consider that legislative change in conducting their individualized review of motions for compassionate release." *Id*.

The Fourth Circuit's analysis in *McCoy*, when applied to the facts presented here, compels the conclusion that district courts are permitted to consider *Norman* when determining whether extraordinary and compelling reasons exist to reduce a defendant's sentence pursuant to § 3582. Like the stacking provisions at issue in *McCoy*, the change in the law reflected in the *Norman* decision creates the possibility of vast sentencing disparities between those sentenced

9

pre-and post-*Norman*. The difference in the Guideline range applicable here—151 to 188 months versus 18 to 24 months—is more than ten years.

The conclusion that district courts are permitted to consider *Norman* on motions for compassionate release is further supported by the Fourth Circuit's decision in *United States v. Lancaster*, 997 F.3d 171 (4th Cir. 2021), which held that a district court, resentencing a defendant under the First Step Act, was required to recalculate the applicable guideline range based on *Norman*. In *Lancaster*, the Fourth Circuit held that the failure to recalculate the Guidelines "might now prove to be material" because the district court, in calculating the original guideline range, "relied on the fact that Lancaster was a career offender." 997 F.3d at 176. The Fourth Circuit explained that, "since that time, changes in law indicate that Lancaster cannot now be sentenced as a career offender" and that the district court was required to take that into account and recalculate the applicable guideline range. *Id*. Thus, the Fourth Circuit's decision in *Lancaster* also indicates that a defendant may rely upon sentencing disparities created by the *Norman* decision in a motion for compassionate release, even though *Norman* itself is not retroactive.

Although the Fourth Circuit has not yet specifically held that a *Norman* sentencing disparity is an extraordinary and compelling reason for compassionate release, numerous district courts within the Circuit (including in this district) have so held—often in cases with far smaller sentencing discrepancies than is present here. *See, e.g.*, *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (finding that "the retroactive application of *Norman* fits within the category of extraordinary and compelling circumstances that the Fourth Circuit held that § 3582 was meant to capture"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's

current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Owens*, No. 7:10-cr-60, 2022 WL 17821560, at *6 (W.D. Va. Dec. 20, 2022) (52-to-68 month difference warranted compassionate release); *United States v. Naylor*, No. 7:14-cr-00026, 2023 WL 4162280, at *5–6 (W.D. Va. June 23, 2023) (46-month disparity); *United States v. Shaw*, No. 5:13-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (22-month disparity).

The government "boils down" Childs' argument to "the relatively commonplace complaint that newer defendants with similar backgrounds may receive somewhat less onerous sentences." (Dkt. No. 78 at 6.) In the government's view, "changes in the law routinely favor future defendants as against long-ago-sentenced prisoners, and the interests of finality militate against revised sentences for every prior defendant in the wake of modifications to substantive sentencing standards." (*Id.* (citing cases).) The court agrees that the government's position is true in some cases but not in this one.

First, the government's characterization of Childs' motion as essentially a run-of-the-mill quibble sorely downplays the magnitude of the issue he raises. Reducing an inmate's sentence by over a decade—about a quarter of Childs' life so far—is not merely "somewhat less onerous." And to be clear, Childs' argument is not that he received a nominally longer sentence than would other defendants who have "similar" backgrounds; rather, he received a Guideline sentence many multiples longer than would a present-day defendant with the *exact same* criminal history and offense level as him, solely because *Norman* was decided a few years after his sentencing.

Moreover, regardless of how "commonplace" such complaints may generally be, the sentencing disparity here stands out as particularly large. In fact, the decade-plus difference

11

between the low end of the pre- and post-*Norman* Guideline ranges in Childs' case is greater than the disparities in (to the court's knowledge) any other case to raise this issue in the Western District of Virginia since *Norman*. Even the government acknowledges that, although two other circuits have held otherwise,[3] the Fourth Circuit squarely held in *McCoy* that a compassionate release motion may be granted based even on non-retroactive changes in sentencing law where those changes produced gross sentencing disparities. (Dkt. No. 78 at 7–8 (discussing *Norman*).)

The government also argues that the relief Childs seeks is not properly raised in a compassionate release motion pursuant to the Fourth Circuit's recent decision in *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022). There, the court held that a challenge to the validity of a defendant's conviction or sentence can only be raised in a § 2255 motion. The government maintains that Childs' claim is, "in essence, a claimed sentencing error," and thus cannot lie in a compassionate release motion. (Dkt. No. 80 at 1.) It is true that § 2255 is "[t]he exclusive remedy for challenging a federal conviction or sentence after the conclusion of the period for direct appeal, unless [§ 2255] is inadequate or ineffective, in which case the defendant may file a 28 U.S.C. § 2241 petition for habeas corpus pursuant to the savings clause at § 2255(e).'" *Ferguson*, 55 F.4th at 270 (internal quotations omitted). But as this court has previously recognized in like circumstances, Childs "is not challenging the validity of his original conviction or sentence. Instead, he is arguing that a change in case law means that if he were sentenced for the same conduct today as he was in [2012], he would not be a career offender and his guideline sentencing range would be reduced. This is the same type of argument the defendants made in *McCoy*." *Owens*, 2022 WL 17821560, at *5. Because Childs is not

---

[3] *See United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021); *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021).

challenging his original conviction and sentence, his motion for compassionate release is not barred by the holding in *Ferguson*.[4]

Lastly, the government emphasizes the importance of finality in criminal cases as a reason not to reduce prison terms based on sentencing disparities created by decisions such as *Norman*. (*See id.* 6 (citing *Teague v. Lane*, 489 U.S. 288, 309 (1989)).) But in some respect, the entire concept of compassionate release runs counter to principles of finality, by nature of the relief it affords. Despite that, Congress made that relief available to defendants by statute. The fact that the government may see *McCoy*'s proclamation of permissible grounds for compassionate release as "an end-run on finality rules" (*see* Dkt. No. 78 at 7) is not a valid reason to disregard its holding.

No party has disputed that Childs would not be considered a career offender post-*Norman*. And as noted earlier, if he were sentenced today (without the career offender enhancement), his Guideline range would be 18 to 24 months' imprisonment. The resulting disparity between the two sentences (151 months at the low end of the original range and 18 months at the low end of the post-*Norman* range) is 133 months, or just over 11 years. The court finds that this constitutes a "gross disparity" in sentencing that is a sufficiently extraordinary and compelling reason to render Childs eligible for compassionate release.[5]

### 3. A sentence reduction is appropriate after considering the § 3553(a) factors.

Even after finding extraordinary and compelling reasons that would support a sentence reduction, the court still must "consider[ ] the factors set forth in section 3553(a) to the extent

---

[4] Not only did the *Ferguson* court cite *McCoy* approvingly throughout its opinion, but it also expressly distinguished Ferguson's arguments as "clearly different in kind from the arguments made by the defendant[] in *McCoy*" because the former "would require the district court . . . to evaluate whether [Ferguson's] convictions . . . were valid"—an argument which Childs does not make here. *Ferguson*, 55 F.4th at 271.

[5] The same would be true for the disparity between Childs' original low-end Guidelines sentence (151 months) and the high-end of the post-*Norman* Guidelines range (24 months), which is about ten-and-a-half years.

that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

      To start, the nature and circumstances of the underlying offense are serious. Distribution of cocaine is itself problematic, but the fact that Childs committed this offense while on supervised release for conspiracy to distribute cocaine is justifiably concerning. And Childs' criminal history is sustained; he received a criminal history category of V even without the career offender enhancement. That said, the same serious underlying offense with the same criminal history would subject a post-*Norman* defendant to a Guideline sentence of, at most, 24 months—a prison term which Childs has already served 3.5 times over. Thus, the court is hard pressed to conclude that this factor strongly militates against compassionate release. Further, Childs' 24-month consecutive revocation sentence, which will remain unchanged, already adequately reflects the seriousness of distributing cocaine while on supervised release. Lastly, Childs' personal history and characteristics reflect significant hardships in his life. His childhood was difficult; he never had a relationship with his father—who has been in prison since 1978—and his mother neglected and abused him when he was a child. (Dkt. No. 66 at 15.) Childs reported that the state often removed him and his half-sister due to their mother's physical abuse and neglect. (*Id.*) He also suffers from intellectual disabilities and mental health disorders.

      The court must also consider the need for the sentence to afford adequate deterrence to criminal conduct, to protect the public from Childs' conduct, and to provide the defendant with needed medical care or other correctional treatment. Childs admitted guilt in a timely manner, cooperated with the government, and took responsibility for his actions. (*Id.* 4.) While at FCI Petersburg Medium, Childs has made significant efforts toward rehabilitation and developing

14

habits and skills that could sustain a life outside of prison. He completed a 32-week "Start Now" program which focuses on treating inmates with behavioral disorders (Childs submits that this program taught him "how to present myself as a man" (Dkt. No. 79-1 at 1)), a Drug Abuse Education course, anger management classes, and a variety of other education courses. Childs' behavior in prison seems to have improved since he was first incarcerated; he has not had any disciplinary incidents since July 2020. He has also maintained steady jobs as an orderly and in food service, despite not having significant employment experience prior to incarceration. He plans to live with his mother upon release.

Of most salience here, the court must also consider the need for the sentence to provide just punishment for Childs' offense. While his "underlying offense conduct must be considered in connection with his prospects for recidivism and level of dangerousness to the public were he released[,]" the underlying offense conduct "must also be considered relative to the sentence he received and the reduced sentence he would receive." *United States v. Redd*, 444 F. Supp. 3d 717, 727 (E.D. Va. 2020). And, as previously discussed, if Childs received a sentence at the high end of the post-*Norman* Guideline range on his distribution offense, he would have received a sentence of 24 months. Yet, to date, he has spent about 87 months in prison—over three times the highest sentence that the Guidelines would provide for today.

Had Childs been sentenced in 2017 under the law as it now stands, he would have been released from prison over three years ago. Moreover, the court is encouraged by Childs' rehabilitative efforts while incarcerated. Accordingly, the court finds that reducing Childs' distribution sentence of imprisonment to time served and three years' supervised release would result in a sufficient, but not greater than necessary sentence.

As Childs noted in a letter attached to his second motion for compassionate release, "I think I can find real help on the outside. I want to show the world that people can change." (Dkt. No. 72-1 at 4.) The court is—cautiously—optimistic of the same.

## III.  CONCLUSION

For the reasons stated above, Childs' first motion for compassionate release (Dkt. No. 63) will be denied, his second motion for compassionate release (Dkt. No. 72) will be granted, and the court will reduce his prison sentence on the distribution offense to time served. However, all other aspects of the judgment (Dkt. No. 45), entered on January 12, 2017, remain unchanged. Accordingly, Childs will now begin his consecutive 24-month revocation sentence (Case No. 7:11-cr-00085), to be followed by three years' supervised release on the distribution offense (Case No. 7:16-cr-00026). The court will enter an appropriate order.

Entered: July 24, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge